BRUNSWICK AND TOPSHAM WATER DISTRICT

*vs.*

INHABITANTS OF TOPSHAM.

Cumberland.    Opinion September 24, 1912.

*Appeal.* *Bill in Equity.* *Burden.* *Burden of Proof.* *Contract.* *Degree of Proof.* *Equity.* *Mutual mistake.* *Modification of Contract.* *Water.*

1. To sustain a bill in equity to reform a contract, the plaintiff must show that the contract executed does not express the terms to which the parties actually agreed, and which were intended to be expressed, and that the mistake was mutual. The proof must be full, clear and decisive, and beyond reasonable doubt or uncertainty, but it is not necessary that the testimony be free from contradiction.

2. That there was a mistake in drafting the contract in question in this case, and that it was a mutual mistake, is established by the requisite burden of proof.

On appeal from the decree of a single justice who ordered a reformation. Appeal denied. Decree below affirmed with additional costs.

This is a bill in equity to reform a contract, between the Brunswick and Topsham Water District and the Inhabitants of Topsham for an extension of the Water System by the Water District across the Androscoggin River into the village of Topsham. The plaintiff claims that the contract drafted and executed does not express the terms to which the parties actually agreed and which were intended to be expressed. To sustain the bill, the plaintiff must show that there was a mistake and that it was mutual by a very high degree of proof.

Case stated in the opinion.

*Wheeler & Howe,* for complainant.

*Oakes, Pulsifer and Ludden,* for respondents.

SITTING:  WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, HALEY, JJ.

SAVAGE, J.   Bill in equity to reform a contract.   The case comes up on appeal from the decree of a single justice, who ordered a reformation.

To sustain the bill, the plaintiff must show that the contract drafted and executed does not express the terms to which the parties actually agreed, and which were intended to be expressed, and that the mistake was mutual.   That there was a mistake, and that it was mutual must be shown by a very high degree of proof, as may be seen from the following expressions gathered from our own reports. The proof must be "full, clear and decisive," "strong, satisfactory and convincing," free from all doubt and uncertainty," "beyond fair and reasonable controversy," "beyond reasonable doubt," such as "entirely to satisfy the conscience of the court."   *Farley* v. *Bryant,* 32 Maine, 474; *Young* v. *McGown,* 62 Maine, 56; *Fessenden* v. *Ockington,* 74 Maine, 123; *Andrews* v. *Andrews,* 81 Maine, 337; *Cross* v. *Bean,* 81 Maine, 525; *Linscott* v. *Linscott,* 83 Maine, 284. But this does not mean, of course, that the testimony on the whole must be free from contradiction.   A burden as severe as that required by law in this case is well sustained in numberless cases, where life or liberty are at stake, though the testimony is in sharp conflict.

The general history of the case is not in dispute.   Prior to the making of the contract in controversy, the plaintiff's physical plant was confined to Brunswick alone.   It did not extend into Topsham. The inhabitants of Topsham wished the system extended across the Androscoggin river into the village of Topsham.   So much of the proposed extension as concerns this case is approximately represented by the following sketch.

At that time the plaintiff had a twelve inch main, along Main Street in Brunswick, which ended at Mill Street. From Mill Street there was a six inch pipe extending "to the foot of Mill Hill," towards the river.

The plaintiff made a written proposal to the town of Topsham to "put water across to Topsham through a 12 inch pipe," and through certain streets named, "the town of Topsham to guaranty the yearly payment of a sum for the use of water from above service to equal the rate which the gross earnings of the Brunswick system on its total investment figured on the basis of the past six months." The proposal estimated that "the basis of figuring would mean about $8\frac{1}{2}\%$ to $9\%$ on the cost of putting in the mains as described." It provided that if the percentage in Brunswick should increase or diminish from any causes, the amount to be guaranteed by Topsham should be increased or diminished in the same proportion. It also provided that if the cost of repairs "in the Topsham service should in any year exceed the relative proportion of repairs to investment in Brunswick the town of Topsham will pay any and all such deficiency." The town of Topsham appointed a committee of three, and authorized the committee "to contract on behalf of the town" with the plaintiff District, "for a supply of water for municipal uses for such time and upon such terms as may be mutually agreed, and particularly to contract with said District for such supply on the terms of the paper hereto annexed, (which was the proposal of the plaintiff already referred to), or on such modifications thereof as may be mutually agreed." After many conferences between the trustees of the District and the committee of the town, a draft of a contract was made by counsel for the plaintiff, and examined and approved by counsel for the defendant, after certain modifications had been made. The draft was modified with reference to the length of time the contract was to run, and also by the provision that if the cost of repairs in Topsham were less in proportion than the cost of repairs in Brunswick, computed with reference to construction cost, the District should pay the difference to the town. The draft as prepared and approved by counsel was undoubtedly in accordance with their understanding of the proposed contract. But it does not appear how familiar the counsel had been with the progress of the negotiations and discussions. The case does not

show that the counsel for the plaintiff had been present at any meetings of trustees and committee until after the draft was prepared, while the counsel who then assisted the committee of the town testifies that he was present at two conferences. The case shows that there were perhaps twenty conferences in all. In the end, the draft finally prepared was read to all the trustees and members of the committee, and was then executed by them.

The contract as signed, after providing for hydrant rentals to be paid by the town, contained this clause: "In addition to such hydrant rental the town of Topsham agrees to pay to said district annually on the first day of December during the continuance of this contract such further sum as may be required to assure and yield to said district a total gross income from water rates in said town which shall bear the same ratio to the construction cost of the plant of said district in the limits of the the town of Topsham, as the total gross income of the district from water rates in the town of Brunswick shall bear to the construction cost of the plant and property of the district in said Brunswick."

By this contract, as expressed, the plaintiff was guaranteed to receive from Topsham and the users of water in Topsham the same percentage of income, based on cost of construction within the limits of Topsham, as it received from water rates in Brunswick, based on the cost of the construction of that part of the plant which was in Brunswick. Each territory was to contribute the same percentage, Topsham the same as Brunswick. And the amount to come from Topsham was to be computed on the basis of the cost of construction within Topsham. The Brunswick percentage was to be applied to the cost of construction in Topsham, and if there was any deficiency in the receipts from other sources, the town agreed to make up the deficiency. The town of Topsham now claims that this is precisely the result which was reached and agreed to in the oral negotiations, and is correctly expressed in the written contract.

On the other hand, the plaintiff claims that it was agreed that the construction cost, on which the amount which Topsham might have to pay was based, was the cost of the construction of the entire extension, from Mill Street in Brunswick, down Mill Hill, across the river into Topsham, and within Topsham; and that the clause in the contract which made the town line the dividing line

between the respective portions of construction cost was a mistake. The distance between Mill Street and the town line is about 900 feet.

Here then is the question.  In fixing cost of construction as a basis on which income was to be computed, was it agreed that Topsham's part of construction cost was to begin at Mill Street, or at the town line?  The plaintiff must show the former.  The question is of importance.  The more the construction cost that is charged to Brunswick, the less will be the Brunswick rate or percentage of increase or cost, and the less Topsham will have to pay to equal the Brunswick percentage.  And the less the construction cost that is charged to Topsham, the smaller will be the basis upon which the Brunswick percentage is to be applied.

To support its contention the plaintiff introduced the testimony of all three of its trustees, and of one of the committee of the town. They all agree.  And it is sufficient to say, without analysis, that if their testimony is true, the plaintiff's contention is fully proved. One of the committee is now dead.  The remaining member testified for the defendant.  This last witness testifies clearly enough that he understood the Topsham percentage was to be reckoned on that part of the plant that was in Topsham, that Topsham was not to pay interest(?) on the cost of the plant from Mill Street to Topsham line.  He says that he did not understand interest(?) was to be paid.  He says: "I understood that, if we put in a twelve inch pipe and paid for it, all the expense of putting in a twelve inch pipe in place of an eight inch or six inch pipe, that was all that was required of Topsham."  And to the question, "You understood that Topsham was to pay the cost of substituting the twelve inch pipe?" he answered, "Yes, Topsham would pay those bills."  Since the substitution of the twelve inch pipe was between Mill Street and the town line, and since the town was in no event to pay the cost of substitution, but only an income based upon it, in case the plaintiff is right, it is not easy to interpret the witness's testimony, or his conception of the contract.  He may have been misled or confused. But taking the last part of his testimony as it stands, the witness evidently was under the impression that in some way the laying of that 12 inch main was to be a burden upon the town of Topsham.

The plaintiff claims, and the testimony of its witnesses substantiates the claim, that it was understood on both sides, that the

Brunswick end of the plant was not to be called upon to help out any deficiency at the Topsham end; nor vice versa; that each end should take care of itself; that the extension from Mill Street to the town line was of no benefit to the Brunswick end; that it was essential to the Topsham end; that it was really a part of the Topsham plant. And so, it is argued, this was the fair and natural way, the probable way, to make the division, and that this probability tends to strengthen the effect of the testimony of the witnesses.

To this it is answered that if it had been intended to place on Topsham the burden of raising income on the cost of the extension from Mill Hill to the town line, in order to proportion burdens according to benefits to be received, then it would have been fair to give Topsham the benefit of the income received from that part of the extension, and that the failure to do so raises a probability that the parties did not understand that Topsham was concerned with anything on the Brunswick side of the line,—either cost or income. The plaintiff replies that it had already, prior to the contract, a sufficient pipe for service of customers from Mill Street to the river, and had the income therefrom assured; and, therefore, that it had no occasion to build, and received no benefit from building, the larger main, and that there was no reason, under such circumstances, why it should yield the benefit of that income to the defendant.

But we pass by arguments on both sides which seem to us of minor importance, to note two undisputed facts which are of importance, and of which one seems almost conclusive. First, the proposal originally made by the plaintiff to the defendant was to "put water across to Topsham through a twelve inch main," for which, with other things, the town was to guarantee a gross income "computed as a percentage *on the cost of putting in the mains as described.*" This cost began at Mill Street. The defendant town authorized its committee to contract *on the terms of that proposal,* or on modifications thereof. The action of the town was public, and was undoubtedly known to the trustees of the plaintiff. If so, why should these trustees have agreed to other and less favorable terms, when they knew that the town was willing to treat with them on their own terms, and had instructed its committee so to do? The case of the defendant does not answer that question.

Secondly, the case does not show that during the negotiations there developed any difference of views concerning the question now in dispute. There is no evidence that it was the subject of debate. But there were two subjects about which for a time there was a disagreement. One was the length of time the contract was to run, and the other the size of the main pipe from Mill Street to Topsham. The plaintiff's proposal was to put in a twelve inch pipe. The defendant's committee thought an eight inch pipe was all that was necessary for their town's needs. It was made a matter of some argument, but the committee seem to have yielded to the insistence of the plaintiff. If the defendant's present contention is correct, we do not see why the size of the pipe on the Brunswick side of the line should have been a matter of discussion at all; certainly not, if the plaintiff was willing to put in a larger pipe than the committee thought was necessary. Whatever the size of that pipe, the cost of construction in Topsham was not affected. Topsham was not concerned that way. Indeed, the larger and more expensive the pipe put in in Brunswick, the larger would be the cost of construction of the Brunswick part of the plant, and the less would be the percentage of income, and so the less would be required of Topsham, which was to guarantee the same rate of percentage, and no more, from her side of the river. Topsham could only be interested in the cost and size of the pipe in question, in the case it was to be added to the construction cost of the Topsham plant. The fact as we have stated it is undisputed, and we are unable to construe it otherwise than as meaning that the Topsham committee then understood that the expense of construction from Mill street to the town line was to be a part of Topsham's construction cost.

We need go no further. That there was a mistake in drafting the contract, we think is established by the legal burden of proof. The decree of reformation made by the single justice was sufficiently supported by the evidence, and must be affirmed. We add that we do not regard it as very strange that the trustees and the committee did not detect the error when the draft was read to them. The paragraph is involved, necessarily so, and we think it quite likely that the mind of a layman would not be able to follow the words and get their drift correctly in one reading.

*Appeal denied.   Decree below*
*affirmed with additional costs.*